IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| **BREANA SCHENK, as next best friend to Ev M, Em M, and El M, and the ESTATE OF KELSEY DELYAH SCHENK-McKEE,** ) ) ) ) ) | |
| Plaintiffs, ) ) | |
| ) | NO. 22-cv-01268- STA-jay |
| vs. ) ) | |
| **PAUL A. THOMAS, GIBSON COUNTY SHERIFF, et al.,** ) ) ) | |
| Defendant. ) ) | |

**ORDER PARTIALLY GRANTING AND PARTIALLY DENYING
DEFENDANTS' PARTIAL MOTION TO DISMISS**

Plaintiff Breana Schenk filed this lawsuit as next best friend to her nieces/nephews and on behalf of the estate of her sister Kelsey Delylah Schenk-McKee ("the Decedent"), whose death occurred while she was incarcerated at the Gibson County Correctional Complex (the "Jail"). The lawsuit is brought pursuant to 42 U.S.C. § 1983 for the alleged deprivation of the civil rights of the Decedent. Although the lawsuit asserts claims secured by both the Eighth and Fourteenth Amendments, because the Decedent was a pre-trial detainee at the time of her death, the Fourteenth - not the Eighth Amendment - applies. *See Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 (6th Cir. 2005) (explaining that pretrial detainees have a right under the Fourteenth Amendment to adequate medical treatment, which is analogous to the right of prisoners under the Eighth Amendment).

Defendants Gibson County, Tennessee, Sheriff Paul A. Thomas, Danny Lewis, Tamela Cox, William Holbrook, William Morgan, Beletha Yarbrough, Cordale Dance, Michael McMinn, Eric Bailey, Brandy Hill, and Robin Meese have filed a partial motion to dismiss Plaintiffs' amended complaint. (ECF No. 20.)[1] Plaintiffs have filed a response to the motion.[2] (ECF No. 26.) Defendants have not filed a reply. For the reasons set forth below, the motion is **PARTIALLY GRANTED** and **PARTIALLY DENIED**.

Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). A complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action...." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply

---

[1] Various unserved defendants are not parties to the motion.
[2] Plaintiffs' two-page response merely asserts that the amended complaint does state a claim and, if the Court determines that it does not, then Plaintiffs should be allowed to file a second amended complaint.

2

calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

Allegations of the Amended Complaint

The amended complaint (ECF No. 18) alleges as follows. After Decedent was incarcerated at the Jail, "various" individual family members, including Plaintiff and the Decedent's mother, Delylah McClendon, and the Decedent's attorney spoke with Sheriff Thomas and his Jail Staff and advised them of medical conditions allegedly suffered by the Decedent as well as the need for medical intervention concerning those conditions. (*Id.* ¶ 13.)  The Decedent suffered from Hepatitis C, epilepsy, seizure disorder, and severe depression. (*Id.*)  Family members were "assured that proper measures would be taken by the Gibson County Sheriff Department" for her medical conditions. (*Id.*)

On December 3, 2021, the Decedent began to experience "a number of physical symptoms" associated with liver failure; she "presented to the Gibson County Correctional Complex seven (7) requests for medical treatment beginning November 15, 2021 to and throughout the day of December 3, 2021," which "Jail staff did not act upon." (*Id.* ¶ 14.)

On December 4, 2021, Decedent's symptoms "associated with her Hepatitis C and toxic levels of Fentanyl and Methamphetamine" worsened, and she complained to the "jail guards/correction officers, and was ignored." (*Id.* ¶ 15.) Officers Robin Meese, David Abraham, and Lanel Palmer rendered no aid in response to the Decedent's repeated requests for medical treatment. (*Id.*)

At approximately 6:30 A.M. on December 4, medications were provided to "four inmates in cell K2," and all inmates were alert according to Defendant Meese. (*Id.* ¶ 17.) At approximately 7:45 A.M., Defendant Bailey "reported that an inmate was found unresponsive in cell K2." (*Id.*)

"Jailer Robin Meece [sic] was advised by an inmate in cell K2, that Decedent had obtained drugs from the inmate in cell K3." (*Id.*) In response, Defendant Meese performed a strip-search of an inmate located in cell K3 as well as a search of cell K3 but "failed to inform the other jailers of the potential drug overdose so that the Nasal Narcan Procedures could be instituted." (*Id.*) Gibson County has a nasal Narcan procedure, and Defendant Meese, along with other defendants, failed to administer Narcan to the Decedent. (*Id.*)

Defendants allegedly failed to provide the Decedent adequate medical treatment. (*Id.* ¶ 21.) Additionally, "Gibson County's existing policy and procedures, and/or failure to train and/or supervise its correctional officers and prison staff constitutes deliberate indifference to Decedent's serious medical conditions and safety, and was the cause of violations" of the Decedent's rights. (*Id.* ¶ 62.)

<u>Analysis</u>

Initially, the Court must determine if this case presents a statute of limitations issue. The Decedent's death occurred on December 4, 2021. Although Defendants contend that the complaint "may" not have been filed until December 12, 2022, which is more than one year after the Decedent's death, Court records show that it was filed on December 2, within the one-year statute of limitations. (ECF No. 1.) Thus, any arguments made by Defendants as to the statute of limitations are without merit.

<u>Defendant Gibson County</u>

Defendants have moved to dismiss the claims against Gibson County on the ground that the amended complaint fails to adequately plead that a specific policy or custom of Defendant County was the moving force behind the alleged constitutional deprivation as required by *Monell v. Dept. of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978). Instead, according to Defendants,

4

Plaintiffs have pled generally and insufficiently that Gibson County is liable to them for its "polic[ies] and procedures, and/or failure to train and/or supervise its correctional officers" as well as its "policies and customs." (Amd. Cmplt. ¶¶ 62 & 63, ECF No. 18.)

Generally, local governments such as Defendant County are not considered to be "persons" under § 1983 and, thus, are not subject to suit. *Monell*, 436 U.S. at 691. However, when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [complained of] injury [,]" municipalities and other local governments are considered a "person" for purposes of § 1983. *Id.* at 694; *see also Bd. Of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell*). "Under § 1983, local governments are responsible only for their own illegal acts" and may not be held vicariously liable for the actions of their employees. *D' Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011)). That is, § 1983 liability does not attach to a government entity based on the actions of its employee tortfeasors under the doctrine of respondeat superior; instead, such liability may only be imposed on the basis of the entity's own custom or policy. *Monell*, 436 U.S. at 691.

Thus, plaintiffs who seek to impose liability on local governments under § 1983 must prove that an action pursuant to an official policy or custom caused their injury. *Id.* "[T]he official policy must be 'the moving force of the constitutional violation' in order to establish the liability of a government body," *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (quoting *Monell*, 436 U.S. at 694), and that body may be held liable only for constitutional violations resulting from its official policy. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 n. 6 (1986) (citations omitted). Official municipal policy includes the decisions of a government's lawmakers or the acts of its policymaking officials. *Id.* at 480 – 481 (1986). A municipality's "policies" are "decisions of its

5

duly constituted legislative body or those officials whose acts may fairly be said to be those of the municipality," *Bryan Cnty.*, 520 U.S. at 403-04, while a "custom" is a practice that, while not formally approved, "may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Id.* at 404. A custom can be one of action or inaction and need not be formally approved by the entity. *City of Canton v. Harris*, 489 U.S. 378, 404 (1989).

Absent proof it resulted from an unconstitutional policy or custom, a county is not liable for a single incident resulting in a constitutional violation. *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-824 (1985). Furthermore, a county is not liable unless there is an "affirmative link between the policy and the particular constitutional violation alleged" or "causal connection." *Id.* Thus, a plaintiff must "identify the policy, connect the policy to the municipality itself, and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993). Plaintiffs have failed to do that in the present case.

Instead, Plaintiffs have pointed to the Sheriff's Department's Nasal Narcan Procedure, Gibson County Sheriff's Department Correction Manual and Procedure, Chapter 25, and allege that Defendants Meese, Palmer, and Abraham failed to comply with the policy. (Amd. Cmplt. ¶ 17, ECF No. 18.) They also point to Chapter 10 of the Manual which provides for Supervision, Management of Inmates and Contraband, 10.00 Procedure - "The Correctional Officer will conduct cell checks of inmates in all sections of the jail at least hourly, on an irregular schedule, with the results logged." (*Id.* ¶ 18.) They then allege that the deprivation of the Decedent's rights was "a direct and proximate result of the acts, omissions, policies, and customs of Defendant Gibson County." (*Id.* ¶ 63.) However, the policies pointed to by Plaintiffs were in place to protect prisoners and detainees. The Court agrees with Defendants that Plaintiffs' own allegations show

that the violation of the policies — not the policies themselves — were the alleged cause of the deprivation. Accordingly, the Court finds, as a matter of law, that there is no casual connection between Defendant County's written policies and any deprivation of the Decedent's constitutional rights.

Plaintiffs also allege that that "Defendants have engaged and continue to engage in a pattern or practice of failing to protect inmates in the Gibson County Jail/Correction Complex from undue risk of harm by (*inter alia*) failing to provide adequate medical and mental health care […]." (*Id.* ¶ 64.). As factual support for this allegation, they mention that "PACER[3] indicates that since 2006, Gibson County has been sued fifteen times for various violations of prisoner civil rights." (*Id.*) However, Plaintiffs provide no context for this information. They do not explain (1) when the lawsuits occurred; (2) the nature of the lawsuits; (3) how the lawsuits were resolved; (4) how the lawsuits were factually or legally similar to this case; or (5) what "custom" or "practice" shown by those cases acted as the "moving force" for the alleged constitutional deprivation here.  The mere fact that Gibson County has previously been sued for alleged prisoner civil rights violations does not meet the pleading standard of *Iqbal* and *Twombly*.  *See, e.g., Brown v. Cuyahoga Cty.*, 517 Fed. App'x 431, 436 (6th Cir. 2013) (holding that the broad assertion that an unconstitutional policy or custom exists "is nothing more than a bare recitation of legal standards" and is insufficient). Accordingly, Plaintiffs have failed to state a plausible claim against Gibson County under a custom or pattern or practice theory.

---

[3] Federal court case files are maintained electronically and are available through the internet-based Public Access to Court Electronic Records ("PACER") service. PACER allows the public, including attorneys, to search and locate appellate, district, and bankruptcy court case and docket information. *See Atkins v. Vilt*, 2021 WL 2021125, at *4 (W.D. Ky. May 20, 2021) (describing the electronic service).

Finally, Plaintiffs allege that Defendant County's "failure to train and/or supervise its correctional officers and prison staff constitutes deliberate indifference to Decedent's serious medical conditions and safety, and was the cause of violations of Decedent's right to due process of law, and to be free from cruel and unusual treatment pursuant to the Eight and Fourteenth Amendments of the United States Constitution." (Amd. Cmplt. ¶ 62, ECF No. 18.) "[A] local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick*, 563 U.S. at 61. To succeed on a failure to train or supervise claim, a plaintiff must prove that (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury. *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006).

Plaintiffs have failed to allege in a non-conclusory manner the necessary elements of this claim. Plaintiffs allege no facts related to Defendant County's training or supervision of its officers. They have provided no facts concerning what Gibson County's training policies were, why they were inadequate, how Gibson County was deliberately indifferent, or how any alleged failures in training or supervision related to the Decedent's injuries. "Plaintiff's use of phrases such as 'failure to train,' [and] 'failure to supervise'... is meaningless without any factual allegations." *Mitchell v. City of Hamilton*, 2012 WL 701173, at *5 (S.D. Ohio Mar. 1, 2012) (quoting *Johnson v. Gannon*, 2010 WL 1658616, at *4 (M.D. Tenn. Apr. 23, 2010)).

> To plead a § 1983 claim based on a failure to train sufficient to withstand a Rule 12(b)(6) motion after *Iqbal* and *Twombly*, the plaintiff must plead more facts than those that constitute the alleged underlying constitutional violation. *See Hill v. City of Cincinnati*, No. 1:09–cv–800, 2010 WL 3257725, at *5 (S.D. Ohio Jul.16, 2010) (dismissing claim against the city where the plaintiff pleaded "only facts [that] ... relate to her individual circumstances"), report and recommendation adopted by,

8

> 2010 WL 3257727 (S.D. Ohio Aug.17, 2010); *Scrap Yard, LLC v. City of Cleveland*, No. 1:10 CV 2465, 2011 WL 3900571, at *4 (N.D. Ohio Sep.6, 2011) (dismissing claims that were "founded on 'a single set of allegedly wrongful acts'" rather than on "violations [that] occurred pursuant to the City of Cleveland's policy or custom."). The plaintiff should plead facts regarding the nature of the training and supervision provided to the officers. The plaintiff also should plead facts demonstrating deliberate indifference, such as facts that policymakers "were on notice as to constitutional violations by officers" or "that a pattern of similar constitutional violations [has] occurred." *Mason v. City of Warren Police Dep't*, No. 10–cv–14182, 2011 WL 5025841, at *12 (E.D. Mich. Oct.21, 2011). Here, Mitchell has pleaded facts concerning only a single set of wrongful acts towards him, not a policy or custom of inadequate training or supervision.

*Mitchell*, 2012 WL 701173, at *5.

Likewise, in this case, Plaintiffs have "pleaded facts concerning only a single set of wrongful acts towards [the Decedent], not a policy or custom of inadequate training or supervision," and, thus, they cannot maintain a § 1983 against Defendant County based on a failure to train or supervise theory.

For these reasons, the motion to dismiss is granted as to Defendant Gibson County, and the County is dismissed as a defendant.

<u>Individual Defendants</u>

Plaintiffs have brought claims against the individual defendants in their individual and official capacities. In a § 1983 action, claims against officers in their official capacities are duplicative of claims against the county, *see Simpkins v. Boyd Cnty. Fiscal Ct.*, 2022 WL 17748619, at *5 (6th Cir. Sept. 2, 2022), and it is well-settled that those claims should be dismissed against government entity employees as redundant when the plaintiff also sues the government entity. *See e.g.*, *Shepherd v. Floyd County*, 128 F. Supp. 3d 976, 977-78 (E.D. Ky. 2015). Consequently, the Court grants the portion of the motion seeking dismissal of the official capacity claims against Defendants.

9

As for the individual capacity claims, § 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws." 42 U.S.C. § 1983. In order to prevail on such a claim, a § 1983 plaintiff must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law." *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003). "Section 1983 is an individual liability statute and thus [the plaintiff] bears the burden of 'specifically link[ing] the officer's involvement to the constitutional infirmity.'" *Przybysz v. City of Toledo*, 746 Fed. App'x. 480, 483 (6th Cir. 2018). Thus, under *Twombly*, a plaintiff must attribute specific factual allegations to particular defendants. When a person is named as a defendant without an allegation of specific conduct, the complaint against that defendant is subject to dismissal. *See Gilmore v. Corr. Corp. of Am.*, 92 Fed. App'x 188, 190 (6th Cir. 2004) (dismissing complaint when plaintiff alleged only that the defendant violated his constitutional rights). "Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery under § 1983." *Id.* (citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57 (1978)). Instead, "a complaint must contain either direct or inferential factual allegations against individual defendants respecting the material elements of some viable legal theory to satisfy federal notice pleading requirements." *Cummings v. Ohio Dep't of Rehab. & Corr.*, 2020 WL 4432923, at *1 (N.D. Ohio July 31, 2020) (citation omitted).

In the present case, Plaintiffs allege that Defendants violated the constitutional rights of the Decedent by being deliberately indifferent to her serious medical needs. Defendants Morgan, Yarbrough, Dance, McMinn, and Hill were correctional officers/jailers during the relevant events. (Amd. Cmplt. ¶ 8, ECF No. 18.) Family members and the Decedent's attorney informed the

Sheriff and "Jail Staff" of the Decedent's "medical conditions, being Hepatitis C, epilepsy, seizure disorder and severe depression and the need for medical intervention on her behalf."[4] (*Id.* ¶ 13.) The Decedent sought medical treatment seven times before her death, but the Jail Staff did not act upon those requests. (*Id.* ¶ 14.) She complained of her "increased pain and symptoms" to Jail Staff on December 4, but the Jail Staff ignored those complaints. (*Id.* ¶ 15.)

The specific allegations as to Defendants Hill, Morgan, Yarbrough, Dance, and McMinn are:

> Jailer Brandi Hill with knowledge of Decedent's urgent need for medical attention and treatment, placed and kept Decedent in her cell despite her repeated requests for treatment for her serious medical conditions, and failure to recognize opioid effects when found violated her Eighth and Fourteenth Amendment rights, all leading to her untimely death.

(*Id.* ¶ 28.)

> Jailer William Paul Morgan with knowledge of Decedent's urgent need for medical attention and treatment, placed and kept Decedent in her cell despite her repeated requests for treatment for her serious medical conditions, and failure to recognize opioid effects when found violated her Eighth and Fourteenth Amendment rights, all leading to her untimely death.

(*Id.* ¶ 29.)

> Jailer Beletha J. Yarbrough with knowledge of Decedent's urgent need for medical attention and treatment, placed and kept Decedent in her cell despite her repeated requests for treatment for her serious medical conditions, and failure to recognize opioid effects when found violated her Eighth and Fourteenth Amendment rights, all leading to her untimely death.

(*Id.* ¶ 35.)

> Jailer Cordale J. Dance with knowledge of Decedent's urgent need for medical attention and treatment, placed and kept Decedent in her cell despite her repeated requests for treatment for her serious medical conditions, and failure to recognize opioid effects when found violated her Eighth and Fourteenth Amendment rights, all leading to her untimely death.

---

[4] In their motion, Defendants do not dispute that the Decedent had serious medical needs.

11

(*Id.* ¶ 38.)

> Jailer McMinn with knowledge of Decedent's urgent need for medical attention and treatment, placed and kept Decedent in her cell despite her repeated requests for treatment for her serious medical conditions, and failure to recognize opioid effects when found violated her Eighth and Fourteenth Amendment rights, all leading to her untimely death.

(*Id.* ¶ 40.)

Plaintiffs further allege, as to these specific Defendants, that "their wrongful acts and/or omissions"

> constitute reckless disregard and deliberate indifference to Decedent's serious medical condition and safety in violation of Decedent's right to due process of law, and to be free from cruel and unusual punishment pursuant to the Eighth and Fourteenth Amendments of the United States Constitution.

(*Id.* ¶¶ 48, 49, 55, 58, 60.)

Defendants posit that these allegations are conclusory and are subject to dismissal. To the contrary, at this early stage of the litigation, the Court finds that the allegations meet the requirements of *Twombly* and *Iqbal* that a complaint contain sufficient factual content to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 556. The allegations state that these defendants were aware of the Decedent's medical needs and yet kept her in her jail cell and refused her requests for medical attention and did not recognize the effects of opioids on her. Those allegations are specific enough to survive a motion to dismiss.

The amended complaint makes the same allegations against Bailey that it makes against Defendants Hill, Morgan, Yarbrough, Dance, and McMinn. Additionally, Plaintiff alleges that Bailey "reported that an inmate was found unresponsive in cell K2 […]." (Amd. Complt. ¶ 17, ECF No. 18.) Again, at this early juncture, the Court will allow the claims against Defendant Bailey to go forward.

The same allegations are also made against Defendants Sheriff Thomas, Chief Deputy Lewis, Chief Jailer Cox, and Deputy Holbrook with the additional allegation that they each, individually

> with knowledge of Decedent's urgent need for medical attention and treatment, placed and kept Decedent in her cell despite her repeated requests for treatment for her serious medical conditions, all leading to her untimely death [and] failed to prevent the introduction of dangerous drugs (fentanyl and methamphetamine) into the jail by lack of appropriate searches of incoming prisoners or failing to properly train or supervise his employees in conducting appropriate searches. He [or she] was deliberately indifferent to [the Decedent's] medical condition and exposure to drugs.

(*Id.* ¶¶ 22 – 25.)  Plaintiffs specifically allege that family members and the Decedent's attorney told Defendant Sheriff Thomas about her medical conditions and need for medical care and that they were assured that "proper measures would be taken."  (*Id.* ¶ 13.)

Defendants correctly state that the liability of supervisors cannot be based solely on the right to control employees or "simple awareness of employees' misconduct." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003).  That is, a supervisory official's failure to supervise, control, or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it. *See*, *e.g.*, *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

Again, although somewhat conclusory, enough facts have been pled to survive a motion to dismiss against these defendants. Plaintiffs have pled that Defendants knew of the Decedent's need for medical care and yet kept her in her cell despite her requests for medical treatment and they "failed to prevent the introduction of dangerous drugs (fentanyl and methamphetamine) into the jail by lack of appropriate searches of incoming prisoners." There is also an allegation that Defendants failed to properly train or supervise his/her employees in conducting appropriate searches which led to the death of the Decedent.

These allegations also meet *Twombly* and *Iqbal*'s requirement that a complaint contain sufficient factual content to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 556. Plaintiffs have alleged more than vicarious or supervisory liability in that they have pled actions/inactions taken by these individual defendants.

Defendants also assert in a somewhat cursory manner that they are entitled to qualified immunity. An individual defendant in a 42 U.S.C. § 1983 suit is immune from liability for civil damages when his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Waeschle v. Dragovic*, 576 F.3d 539, 543 (6th Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). To determine whether qualified immunity is warranted, a court must ask: (1) whether the alleged facts, taken in a light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right; and (2) whether the constitutional right was clearly established in the specific context so that a reasonable official would understand that he is violating that right. *Saucier v. Katz*, 533 U.S. 194, 202 (2001).  The right of a pretrial detainee to be free from deliberate indifference in the provision of medical care for a serious medical need is well established. *See*, *e.g.*, *Gomez v. City of Memphis, Tennessee*, 2021 WL 1647923, at *7 (W.D. Tenn. Apr. 27, 2021). And, as discussed above, taking the facts in the light most favorable to Plaintiffs, the Court has found that Plaintiffs have sufficiently alleged that Defendant Officers' actions/inactions violated that right. Because of the undeveloped record at this stage of the proceedings, the Court denies the Defendants' defense of qualified immunity without prejudice, to be later raised if deemed warranted by Defendants.

Individual Claims of Plaintiffs

Plaintiffs state that they "bring this cause of action in their individual capacities as the surviving children of decedent […] and as the personal representatives of the estate of" the Decedent. (Amd. Cmplt. ¶ 6, ECF No. 18.) Plaintiff's claims fall under Tennessee's wrongful death statue. Tenn. Code Ann. §§ 20-5-102, 106, & 107; *Beard v. Branson*, 528 S.W.3d 487 (Tenn. 2017).

In *Beard*, the Tennessee Supreme Court explained as follows.

> The next section of the wrongful death statutes describes who is entitled to bring the wrongful death action: "The action may be instituted by the personal representative of the deceased or by the surviving spouse in the surviving spouse's own name, or, if there is no surviving spouse, by the children of the deceased or by the next of kin." [Tenn. Code Ann.] § 20-5-107(a) (2009 & Supp. 2016). Section 20-5-110 explains that a wrongful death suit "may be brought in the name of the surviving spouse for the benefit of the surviving spouse and the children of the deceased, in the name of the administrator of the deceased spouse or in the name of the next of kin of the spouse." *Id.* § 20-5-110(a) (2009 & Supp. 2016). It further provides that "[t]he surviving spouse may effect a bona fide compromise in such a suit or right of action and may execute a valid release that shall be binding upon all the children of the deceased or next of kin of the deceased." *Id.* § 20-5-110(b)….
>
> The personal representative may institute the wrongful death action, but he does so for the benefit of the spouse and/or the other statutory beneficiaries, not the decedent's estate. [Tenn. Code Ann.] § 20-5-106(a); *see Johnson v. Metro. Gov't Nashville & Davidson Cnty.*, 665 S.W.2d 717, 718 (Tenn. 1984) ("While an action for wrongful death, of course, may be instituted and maintained by an administrator, ... it has long been settled that the administrator sues as a representative of the next of kin, and not as a representative of the estate or of creditors."); *Memphis St. Ry. Co. v. Cooper*, 203 Tenn. 425, 313 S.W.2d 444, 448 (1958) ("The one who sues as administrator and recovers damages for the wrongful death of the decedent holds this recovery as a trustee for the real beneficiaries under the statute....").

*Beard*, 528 S.W.3d at 497-98. Because it is unclear in in what capacity Plaintiffs are bringing their claims, they are directed to file a status report within fourteen (14) days of this order clarifying that issue.

15

<u>Injunctive Relief</u>

In their prayer for relief, Plaintiffs seek injunctive relief

> permanently enjoining Defendants, their officers, agents, employees, subordinates, successors in office, and all those acting in concert or participation with them from continuing the acts, omissions, and practices set forth in the foregoing paragraphs, and that this Court require Defendants to take such actions as will ensure lawful conditions of confinement are afforded to inmates at the Gibson County Jail.

(Prayer for Relief ¶ 7, ECF No. 18.)

"To obtain an injunction, a plaintiff must be threatened with present or future harm; an injunction cannot be based solely on a past wrong." *Maffei v. United States Dep't of Veterans Affs.*, 2016 WL 3913676, at *2 (N.D. Ohio July 20, 2016) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111(1983); *Brown-Dickerson v. City of Philadelphia*, 2016 WL 1623438, at *7 (E.D. Pa. Apr. 25, 2016) ("But even if the Estate has standing for damages claims, the Estate must have separate standing to obtain prospective relief and it cannot seek such relief because there is no chance that it or [the decedent] will again suffer the harm complained of. Without a reasonable likelihood of future injury, there is no basis for seeking injunctive relief.")).

Here, Plaintiffs seek to proscribe future conduct even though the Decedent cannot be wronged at some future point. Consequently, Plaintiffs are not entitled to injunctive relief, the claim for injunctive relief must be dismissed.

<u>Request to Amend the Complaint</u>

In their response to the motion to dismiss, Plaintiffs ask to amend their complaint a second time if the Court determines that the amended complaint fails to state a claim. The Court will construe the request as a motion to amend the amended complaint. Rule 15 of the Federal Rules of Civil Procedure governs amended and supplemental pleadings. Subsection (a)(1), entitled "Amendments Before Trial," provides:

> [a] party may amend its pleading once as a matter of course within:
>
> (A) 21 days after serving it, or
>
> (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1). Plaintiffs have already amended their complaint once. Therefore, they must seek the Court's permission other Rule 15(a)(2) ("In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.")

Plaintiffs have not submitted a proposed order with their motion, nor have they filed a certificate of consultation as required by the Local Rules of this Court. See LR 7.2 (a)(1)(A) and (B). "Failure to attach an accompanying certificate of consultation may be deemed good grounds for denying the motion." LR 7.2 (a)(1)(B). Nor did Plaintiffs submit a supporting memorandum with their motion as required by Local Rule 7.2(a)(1) ("The Clerk shall accept for filing only those motions in civil cases that include or are accompanied by a supporting memorandum of facts and law…."). Accordingly, the motion to amend is denied on the ground that they failed to comply with the Local Rules.

Furthermore, the motion does not state in what aspects the complaint would be amended. Instead, Plaintiffs merely ask to be allowed "to cure any deficiencies utilizing documentation and information received and gleaned from information gathered since the filing of the motion which will relate back pursuant to FRCP Rule 15." (Resp. p. 2, ECF No. 26.) The Court cannot determine if the proposed amendment would "advance additional claims, join additional parties, or otherwise put the defendants on notice that they will have to defend against additional claims," *CGH Transp., Inc. v. Quebecor World, Inc.*, 261 F. App'x 817, 824 (6th Cir. 2008), or if the amendment would withstand a Rule 12(b)(6) motion to dismiss. *See Thiokol Corp. v. Dept. of Treasury, State of*

*Mich., Revenue Div.*, 987 F.2d 376, 382-83 (6th Cir. 1993). Because the Court cannot determine if the proposed amendment contains a "short and plain statement showing that [Plaintiff] is entitled to relief," Fed. R. Civ. P. 8(a)(2), the motion to amend is denied on this ground also.

Summary and Conclusion

Defendants' motion to dismiss is **PARTIALLY GRANTED** and **PARTIALLY DENIED**. The motion is granted as to all claims against Defendant Gibson County, and Gibson County is dismissed as a defendant. The motion is also granted as to the official capacity claims against the individual defendants and the claim for injunctive relief. The motion is denied as to the claims against the individual defendants and is denied without prejudice as to the defense of qualified immunity. Plaintiffs will have fourteen (14) days in which to file a report with the Court clarifying the capacity in which their claims are brought.

**IT IS SO ORDERED**.

s/ S. Thomas Anderson
S. THOMAS ANDERSON
United States District Judge

Date: August 9, 2023